Pike *v.* Balch.

# COUNTY OF WASHINGTON.

## PIKE *versus* BALCH & *als.*

Where a voyage is broken up by ungovernable circumstances, the master, acting in good faith for all concerned, and under supreme necessity, is authorized to sell the ship and cargo.

But the master acts for the owners or insurers *only,* because they cannot act for themselves; his acts will be valid to the extent of their *extreme necessity.*

Before resorting to a sale of the cargo, if its situation will admit of it before it will probably be lost, he should communicate with the owners; and to effect such communication, he is bound to use any available means within his power.

Where he has sold the cargo, whether, under all the circumstances, he has exercised a sound judgment and discretion, is a question of fact to be determined by the jury.

Sales at auction fall under the provisions of R. S., c. 136, § 4.

And property exposed at such sale does not become *vested* in the highest bidder by being fairly *knocked off* to him.

The auctioneer, after he has knocked off property, if he recognizes a higher bid, may re-open the sale.

Until some of the requirements of the statute at such sales are fulfilled, the right to the property sold does not pass, even to the highest bidder.

Whether certain proceedings at an auction sale, proved to have transpired between the *purchaser* and another person present, did not prevent fair competition and so made the sale invalid, may properly be left to the determination of the jury.

*Salvage* can only be obtained in courts of admiralty jurisdiction.

Where one claims *title* to property under an unlawful sale, he cannot afterwards claim *possession* against the owner for disbursements made and services rendered in saving the property.

ON REPORT from *Nisi Prius,* APPLETON, J., presiding.

REPLEVIN.

PLEA, *non cepit,* and a brief statement that the property described in the writ was the property of defendants and not the property of the plaintiff; and that plaintiff had no right to the possession of the property at the time of the service of the writ.

Pike *v.* Balch.

The officer who served the writ in this case, had another writ of replevin against the same defendants in favor of one William Todd; and the property taken on both was a cargo of lumber which had been shipped by the plaintiff and William Todd, on board the schooner Baltimore, for New York. These shippers belonged to Calais where the cargo was taken in. In a week or more after the vessel left port, she went ashore in a calm and fog, on an island called the "old man," off Little Machias Bay, and was much damaged upon the rocks, and full of water.

The accident occurred on May 18, 1852, upon that part of the island exposed to the open sea. A protest was noted, surveyors called, and on the next day, the captain caused the vessel to be stripped of her sails and rigging, to be advertized and the vessel and cargo sold at public auction the same afternoon. The defendants claimed title to the cargo through that sale.

One point made was, as to the fairness of the sale, but the principal question at issue, and upon which most of the evidence bore, was its *necessity.*

No means were taken to notify the plaintiff of the disaster, or to request any advice as to what measures should be taken.

It appeared, that when the captain went to a notary at Machias Port, to make his *protest*, he was advised that there was a telegraphic station at Machias, which communicated with Calais, and that his ride would not have been an hour longer by coming that way; and was advised to go there and give notice to the owners, but the captain thought it of no use as the danger to the cargo was so great.

It was testified that the vessel might have been got off by a steamboat, but how far it was, where one might be obtained, did not appear.

A tender was made by plaintiff, on May 26, 1852, for the amount paid for the cargo, and expenses of taking it out, which not being accepted, and the defendants claiming the cargo as their own, this suit was commenced.

Several requests were made by the defendants for instructions to the jury, among which the 2d, 3d, 7th, 8th, 9th and 10th were as follows; viz:—

2. *That* the true criterion for determining the occurrence of the master's authority to sell, is the inquiry, whether the owners or insurers, where they are distant from the scene of stranding, can by the earliest use of the ordinary means to convey intelligence, be informed of the situation of the vessel and cargo in time to direct the master before they will probably be lost; *that,* if there is a probability of loss, and it is made more hazardous by every day's delay, the master may then act promptly, to save something for the benefit of all concerned, though but little may be saved; *that* there is no way of doing so more effectual than by exposing the vessel and cargo to sale, by which the enterprise of such men is brought into competition with such as are accustomed to encounter such risks, and who know from experience how to estimate the probable profits and losses of such adventures.

3. *That,* where a vessel is wrecked or stranded on an island in the open ocean, and the vessel and cargo are in imminent peril of immediate loss, and there is a telegraph station within a distance of twenty miles by sea and land from the scene of the wreck or stranding, it is not the duty of the master to leave the vessel and cargo and proceed to such telegraph station, and communicate with the owners prior to a sale for the benefit of all concerned.

7. *That,* if the jury should find, that the sale of the cargo of schooner Baltimore was fairly conducted and the lumber was fairly knocked off to Stevens, for himself and the other defendants, as the highest bidder, for $241; and that was the fair value of the property, and the highest bid heard and known by the auctioneer; although a higher bid may have been made, not loud enough for the auctioneer to hear, or not until the cargo had been knocked off to Stevens; the title to the cargo became thereby *vested* in *them.*

8. *That,* if they shall find, that the cargo was fairly knock-

Pike *v.* Balch.

ed off to Stevens, as the highest bidder, at the best price which the property was fairly worth in the exposed situation it was at the time of the sale, it would not be the duty of the auctioneer, on a suggestion that a higher bid had been made, which he did not hear, to reopen the sale, and offer the property again for a higher bid.

9. That, if they shall find that the cargo was fairly knocked off to Stevens as the highest bidder, for himself and the other defendants, the property *thereby* became *vested* in them, and any arrangement which Stevens may have made with Cole subsequent to its being so knocked off, by the payment of a sum of money for the purpose of pacifying Cole, could not invalidate the sale, or deprive the defendants of the benefit of their purchase.

10. That if they shall find, *that* the sale of the cargo to the defendants was *invalid* by reason of the master's not consulting the owner, and taking his direction before the sale, and that the absolute title of the defendants thereby fails; and shall also find that the cargo was relieved from its peril and brought into a place of security, and saved by the enterprise, labor, expense and risk of the defendants; they were entitled to a liberal reward out of the property saved; and had the right of possession of the property until their claim to *salvage* should be adjusted, settled and paid according to the principles of the maritime law.

The presiding Judge gave the second request, substituting for the words "the earliest use of the ordinary means to convey intelligence," "any available means in the power of the master."

The third request was refused, with the remark that it was for the jury to say whether the master exercised a sound judgment and discretion in the matter.

The seventh was given with the qualification, that if a higher bid was in fact made, which was known to, or recognized by, the auctioneer, and the sale was reopened or proposed to be reopened, if desired, the property would not vest in defendants.

The eighth was given, with the remark, that it was not the duty of the auctioneer on a *mere suggestion* that there had been a higher bid; but if it was affirmed that there was a higher bid, and he was satisfied of its truth, it was then his duty to reopen the sale.

The ninth request was complied with, excepting the qualification, that if the transaction between Stevens and Cole was before the sale was closed, then it was for them to say whether it was not preventing fair competition at the sale.

The tenth, for the purpose of the trial, was refused.

A verdict was returned for plaintiff, and damages were assessed at $1,00. The jury also expressed an opinion that defendants were entitled to salvage, but this part of the verdict was stricken out.

If the Court should be of opinion, that the defendants had a legal claim for salvage, and had the right of possession of the property until their claim of salvage should be adjusted, settled and paid according to the principles of the maritime law, then the plaintiff was to become nonsuit, and a return of the property ordered; but if they had not the right of possession, then judgment was to be entered on the verdict, unless the presiding Judge erred in refusing or modifying some or any of the requested instructions by the defendants, in which event there was to be a new trial.

*J. A. Lowell,* for defendants.

1. The second request should have been given, without the change made in it by the Judge. *Brig Sarah Ann,* 13 Pet. 387; 2 Sum. 206; 3 Rob. Admr. Cases, 243; Am. Law Reg. Nov. 1852, p. 48.

2. The instructions in the third request should have been given; and the remarks of the Judge in refusing to give it, were erroneous. *Brig Sarah Ann,* before cited.

3. The seventh request was sound law and should have been given *without the qualification.* U. S. Dig. vol. 9, p. 59; 1 Louisa. Rep. 11; Long on Sales, Rand's ed. c. 5, p. 228, and pp. 240 and 245; 2 Kent's Com. 2d ed., 537. So also should the eighth request have been complied with.

4. The ninth request was proper, as it was proved, that the management between Stevens and Cole, was subsequent to the cargo's being knocked off to Stevens, as the highest bidder.

5. The Judge, in order to settle the facts of the case, withheld the 10th requested instruction, in doing which he erred. *Sch. Emulous and Cargo,* 1 Sum. C. C. R. 207; *The Centurion,* Ware's Rep. 477; *Brig Sarah Ann,* before cited; 2 Bouvier's Law Dict. 377, title, Salvors; 2 Saund. Plead. and Ev. 760; *Ingraham* v. *Morton,* 15 Maine, 373; *The Emblem,* Davies, 61; *China* v. *Russell,* 2 Blackf. 172; *Walpole* v. *Smith,* 4 Blackf. 304.

6. The jury have negatived all fraud at the sale, by saying that the defendants should have salvage. *Gardiner* v. *Morse,* 25 Maine, 140; *Phippen* v. *Stickney,* 3 Met. 384.

*F. A. Pike,* for plaintiff.

1. The master had no authority to sell the cargo under the circumstances. 2 Am. Leading Cases, 442; *Center* v. *Am. Ins. Co.* 4 Wend. 45; *Hall* v. *Franklin Ins. Co.* 9 Pick. 466; *Bryant* v. *Com. Ins. Co.* 13 Pick. 543, and 18 Pick. 83.

2. It is the master's duty to use any available means in his power to communicate with the owners. Various phrases have been used by the Judges, but they all express one thing, as appears by the cases already cited. Vid. also *Wilson* v. *Miller,* 2 Starkie's R. 1; *Freeman* v. *East India Co.* 5 Barn. & Ald. 617; *Petapsco Ins. Co.* v. *Southgate,* 5 Peters, 601.

3. When the sale is not justified by the circumstances, it is simply void, and cannot affect the owner's right to recover. *Eaton* v. *Amer. Ins. Co.* 7 Cowen, 582. The facts show that the master could have communicated readily with the owners, either by telegraph or a messenger, and not have delayed the sale one hour. And when there is an opportunity for the owner to act, the authority of the master ceases.

4. The sale itself was fraudulent. Auction sales are

within the statute of frauds.    Until the auctioneer makes his memorandum in writing, the bidder at such sale is not bound.   *Martin* v. *Dana*, 13 Met. 385 ; *Burke* v. *Haley,* 2 Gilman, · 614 ; *Cleaves* v. *Foss*, 4 Maine, 1 ; *Alna* v. *Plummer*, 4 Maine, 258 ; 2 Starkie Ev. 68.

5. No claim to salvage can be set up.   In setting up ownership, the defendants waived salvage.   Even a mortgagee or pledgee, when they attach the mortgaged or pledged property, waive their previous claims.   *Libby* v. *Cushman*, 2 Maine, 429 ; *Brock* v. *Ingersoll*, 11 Met. 232 ; *Paul* v. *Hayford*, 22 Maine, 236 ; 2 Hill on Mortgages, 20.

6. But this is not the proper court to try such questions. Admiralty jurisdiction of salvage cases is exclusive.   *Brown* v. *Fair American*, 1 Pet. Admr. Rep. 91.

7. Besides they have forfeited all claims to salvage by converson of the property.   Salvage is forfeited by embezzlement on the part of the salvors.   *Sch. Boston and Cargo*, 1 Sumner, 328 ; *Hope*, 3 Robinson, 215 ; *Brown* v. *Fair American*, 1 Pet. Admr. Rep. 87.

8. But even if salvors, they were not entitled to possession of the property.   It is not necessary to secure such claim.   *Dr. Lushington* v. *Glasgow Packet*, 2 W. Robinson's Admr. Rep. 312.   This property was not *derelict*, and any peculiar rights that attach to salvors of derelict property cannot attach to this.

HATHAWAY, J. — The questions presented in this case are upon certain requests made by the counsel for the defendants for specific instructions to the jury, and the instructions thereupon given by the presiding Judge.

" If the voyage be broken up, in the course of it, by ungovernable circumstances ; the master, in that case, may even sell the ship or cargo, provided it be done in good faith, for the good of all concerned, and in case of supreme necessity, which sweeps all ordinary rules before it." 3 Kent's Com. 173.

The questions presented by the second request, and the

rulings of the Judge thereon, pertain to the duties of the master in such a contingency. The defendants' counsel complains, that his second request was not entirely complied with, and that the instruction given was too severe in its requirements of the master.

The instruction given was the same as requested, except, that the Judge substituted the words, "by any available means in the power of the master," for the words in the request, *to wit*, "the earliest use of the ordinary means to convey intelligence." In case of necessity or calamity, during the voyage, the master becomes the agent of the owners and insurers of the ship and cargo. He is bound to act in good faith, and for the benefit of all concerned, and is not justified in selling either ship or cargo but in case of extreme necessity. *N. E. Ins. Co.* v. *Brig Sarah Ann*, 13 Peters, 387. "The merchant should be consulted if possible. A sale is the last thing the master should think of, because it can only be justified by that necessity which supersedes all human laws. Abbott on Shipping, 367–8, and notes to 7th Am. ed.

In *Hall* v. *Franklin Ins. Co.*, 9 Pick. 466, PUTNAM, J., delivering the opinion of the Court, said, "the master's authority to sell must be confined to a case of extreme necessity, which leaves no alternative, which prescribes the law for itself, and puts the party in a positive state of compulsion to act. The master acts for the owners or insurers, because they *cannot* have an opportunity to act for themselves. If the property could be kept safely until they could be consulted, and have opportunity in a reasonable time to exercise their own judgment in regard to the sale, the necessity to act for them would cease." The same doctrine was held in *Gordon* v. *M. F. & M. Ins. Co.*, 2 Pick. 249, and in *Peirce* v. *Ocean Ins. Co.*, 18 Pick. 83, and in *Bryant* v. *Commonwealth Ins. Co.*, 13 Pick. 543, in which case the law, as given by Abbott, that "the merchant should be consulted if possible" was cited by the Court with approbation as authority. *The American Ins. Co.* v. *Center*,

4 Wend. 45, was a case of *technical* total loss of a vessel insured, in which it was said, that the right of a master to sell was more extensive in this country than in England. Chancellor Kent remarking upon that case, in note D, p. 173, of his Commentaries, 5th ed., approved the doctrine of *Hall* v. *Franklin Ins. Co.*, 9 Pick. as asserting and supporting the stricter doctrine of the English law, which he held to be "best supported by reason and authority."

In *Robinson* v. *Georges Ins. Co.*, 17 Maine, 131, EMERY, J., delivering the opinion of the Court, said, "notwithstanding our desire to make all just allowances for the difficulty of deciding absolutely right, by masters of vessels, in embarrassing cases occurring in foreign countries, we consider, that the authority of the master, to put in peril the interests of the owner in the ports of the United States, must be narrowly watched."

The instruction requested, is in the language used by WAYNE, J., in his opinion, in case of *N. E. Ins. Co.* v. *Brig Sarah Ann*, before cited, and undoubtedly, as a general rule, "the earliest use of the ordinary means to convey intelligence" in such cases, would be the most available and effectual means in the power of the master, but all general rules are subject to exceptions, and where the calamity occurs in a place so situated and limited in its ordinary means of transmitting intelligence by mail, that a resort thereto would be obviously fruitless and nugatory, it is not going beyond the requirements of well established law to hold the master bound to avail himself of such other means as may be in his power, and by which notice might be speedily communicated to the owners.

The subject of the third request was entirely matter of fact to be considered and determined by the jury, and the request was properly refused.

The seventh, eighth and ninth requests were concerning the duties of the auctioneer, and the effect of his proceedings. Auction sales are within the statute of frauds. *Davis* v. *Rowell & al.*, 2 Pick. 64. "No contract for the sale

of any goods, wares or merchandise, for the price of thirty dollars or more, shall be allowed to be good, unless the purchaser shall accept part of the goods so sold and actually receive the same, or give something, in earnest to bind the bargain, or in part payment, or some note or memorandum in writing of the said bargain be made and signed by the party to be charged by such contract, or by his agent thereunto by him lawfully authorized." Statute, c. 136, § 4. The auctioneer is the agent of both parties, and is bound to act for them both, with equal fidelity; and his entry of the name of the purchaser on his book or memorandum containing the particulars of the contract, is a sufficient signing within the statute. Until some one of those things required by the statute, as necessary to complete the contract of sale, be done, a time for repentance remains, and the sale is not perfected. *Kenworthy* v. *Schofield*, 2 Barn. & Cres. 945; 2 Johns. Chan. Rep. 659; *Cleaves* v. *Foss*, 4 Greenl. 1; *Alna* v. *Plummer*, 4 Greenl. 258. Neither of those things necessary to complete the contract of sale having been done, the business remained unfinished and open for further proceedings.

The instructions given upon the eighth request were quite favorable enough for the defendants, and were unexceptionable.

The seventh and ninth requested instructions were erroneously given, and might have furnished good cause for exceptions to the plaintiff if the verdict had been against him. The property did not become vested in the bidder by being fairly knocked off to him. There was something more to be done before his rights of property became vested. There can be no doubt of the propriety of the qualification to the seventh request; and the qualification of the ninth was correctly given according to the doctrine of *Goodwin* v. *Morse*, 25 Maine, 140, which is sound law; the question was properly left to the jury.

By the tenth request the defendants seem to make a contingent claim as salvors. "Salvage is the compensation that

is to be made to other persons, by whose assistance a ship or its lading may be saved from impending peril, or recovered after actual loss." Abbott on Shipping, 554.

This case presents the defendants as claiming to be the absolute owners of the property, not as claiming a lien upon it for salvage. They saved it for themselves, not for the plaintiff. If this were a proceeding by the plaintiff in a Court of admiralty jurisdiction, to obtain possession of the property saved, and the Court believed, that although the sale was invalid by fault of the master, yet, that on the defendants' part, the purchase was *bona fide,* there might, perhaps, be a decree for possession on condition of paying the defendants their disbursements and expenses in saving the cargo according to the rules by which Courts of Admiralty are governed in such cases, as stated by STORY, J., at the close of his opinion in case of the brig *Sarah Ann,* 2 Sumner, 206 ; unless the conduct of the defendants in the matter, had been such as to deprive them of the benefit of such equitable consideration.

It appears by the testimony of Wilson, that when the plaintiff's title and claim to the property were made known to the defendants, and the plaintiff offered to pay their disbursements, and the expenses of getting the lumber on shore, and sought information of the amount, the plaintiff's title was not recognized by the defendants, his offer was not accepted, the information sought was not given, and the defendants claimed the lumber as their own property.

The defendants virtually tendered an issue upon the mere title, and the plaintiff had his right of action at law. Abbott, 556, with notes to 7th Am. ed; *Clark* v. *Chamberlain,* 2 Mee. & W. 78.

In the language of the tenth request, "If the sale was invalid by reason of the master's not consulting the owner and taking his direction before the sale, and the absolute title of the defendants thereby fails;" then the necessity for the sale did not exist. *Hall* v. *Franklin Ins. Co.* be-

fore cited.   And if the master sold without necessity, he sold without authority, and the persons who bought under such circumstances would not acquire a title as against the merchant, but must answer to him for the value of the goods.   Abbott, 368, and notes to 5th Am. ed.

Upon the facts presented in this case, if the defendants have any equitable claim for compensation, for services and disbursements in saving the cargo, their remedy is to be sought in a court of admiralty jurisdiction.

In the rulings of the Judge who presided at the trial, no error is perceived, by which the defendants were aggrieved, and as agreed by the parties, there must be judgment on the verdict.                   *Exceptions overruled.*

*Judgment on the verdict.*

SHEPLEY, C. J., and TENNEY and HOWARD, J. J., concur-red.