O. H. MOBERLY, COMMISSIONER OF FINANCE, FARMERS & MERCHANTS BANK, RESPONDENTS, v. HANNA SCHAPERKOETTER, ADMX., ETC., APPELLANT.—67 S. W. (2d) 121.

Kansas City Court of Appeals.   January 8, 1934.

*James Booth* and *Joseph T. Tate* for respondent.

*L. G. Graf, Jesse H. Schaper* and *Randolph H. Schaper* for appellant.

TRIMBLE, J.—This is an action brought on March 15, 1933, in behalf of the Farmers & Merchants Bank of Owensville, Gasconade county, Missouri (which was then insolvent and in the hands of O. H. Moberly, Commissioner of Finance of Missouri, for the purpose of liquidation), to recover damages from the estate of Herman Stritzel, deceased, for refusing to perform an alleged contract for the purchase of land charged to have been made, during his lifetime, by his final and accepted bid at a foreclosure sale of said land under a mortgage with power of sale in case of default in the payment of the secured debt when due.

The mortgage was given to said bank by Charles Stubblefield, Jr., and wife on 142 acres of land in said county to secure their note for $5400. Said note and mortgage were executed and delivered to said

bank May 2, 1922, the note being due one year after date with six and one-half per cent interest per annum from date until paid. Said mortgage contained the usual provision that if the makers thereof should pay said debt and all interest thereon when due, then said mortgage should be void, otherwise to remain in full force and effect and said bank, its successors or assigns, could procede to sell the said real estate at public vendue to the highest bidder, "at the premises described in said county" for cash, first giving thirty days' public notice of the time, terms and place of sale and of the property to be sold, by advertisement in some newspaper printed and circulated in said county where said premises are situated, and that upon such sale and the payment of the purchase money, said bank should execute and deliver a conveyance of the property sold, to the purchaser or purchasers thereof "and any statement of facts or recital by said Farmers & Merchants Bank in such conveyance in relation to the advertisement, sale, receipt of the purchase money or execution of such conveyance, should be received as *prima-facie* evidence of the truth thereof," etc.

Because of default made in the payment of said debt and interest, foreclosure proceedings were commenced, and on the 12th day of August, 1932, after having given thirty days' public notice as required, the land was sold at public vendue in foreclosure; and plaintiffs allege that at said sale "said Herman Stritzel bid, contracted and agreed to pay said bank for said premises, the sum of five thousand, two hundred dollars ($5,200); that at said sale said Herman Stritzel was the highest and best bidder for said real estate and his said bid was accepted by said bank." And the same was stricken off and sold to him at that sum; "that said bank tendered and offered to deliver to him a good and sufficient mortgagee's deed to said premises; that said Herman Stritzel paid to said bank as a part of the purchase price for said real estate, the sum of $274.78 but has failed and refused, and ever since has failed and refused, to pay the balance due on said purchase price as evidenced by his said bid, contract and agreement, though often requested so to do."

Thereafter, and by reason of said Herman Stritzel's failure and refusal to pay the rest of his bid, the land was readvertised and sold under foreclosure in due and proper form, but at this last sale, it did not bring as much as it did at the first sale, whereby plaintiffs have been damaged in the sum of $1500 for which judgment is prayed.

The petition then alleged that said Herman Stritzel, since making said bid, departed this life intestate, and, defendant has been appointed, and is now, the duly qualified administratrix of his estate.

The answer admitted the death of said Stritzel, "since the date of the alleged sale of the real estate mentioned in said petition" and also admitted the appointment and qualification of defendant as his

administratrix, but denied generally every other allegation in the petition.

The answer then set up that the said Herman Stritzel—

"prior to and at the time of the alleged sale of the real estate mentioned in said petition, was addicted to the use of intoxicating liquors and alcoholic drinks to such an excess to make him mentally incompetent and irresponsible for his actions; that at the time of the making of the contract and agreement alleged in the petition, said Herman Stritzel was suffering from excessive use of intoxicating liquors and alcoholic drinks to such an extent that by reason thereof he was mentally incompetent and incapable of entering into and making the contract of sale, as alleged in the petition herein, in that he did not know and understand the meaning thereof, and the contract or alleged agreement of sale is not and never was binding upon the said Herman Stritzel, or upon this defendant, as his administrator and legal representative."

The answer further set up—

"that the alleged agreement, for the sale of the lands referred to in said petition and sought to be enforced in this action, is verbal only, and not in writing, and signed by Herman Stritzel, named in said petition, in his lifetime, nor by any person by him thereto lawfully authorized in writing, and by reason thereof, this defendant pleads the Statute of Frauds in such cases made and provided as a bar to this action."

The answer further set up as a counterclaim to plaintiffs' cause of action—

"that plaintiffs are indebted to the defendant, as administratrix of the estate of said Herman Stritzel, deceased, in the sum of two hundred seventy-four dollars and eighty-eight cents ($274.88), for and on account of moneys had and received by the plaintiffs to and for the use of the defendant, as administratrix of the estate of said Herman Stritzel, deceased, on the 12th day of August, 1932."

The reply, after denying generally the matters alleged as a defense, set up a ratification by Stritzel of his bid, in paying a part thereof and promising to pay the balance and by taking possession of the premises and renting same to another, and by offering to sell said premises, all done while in the full possession of his faculties.

Among the instructions given by the court at defendant's request, is her instruction No. 3, as follows:

"The court instructs the jury that if the jury shall find and believe from the evidence that the contract of sale alleged in the petition and sought to be enforced in this action was verbal only and not in writing, signed by Herman Stritzel nor by any person by him thereto lawfully authorized in writing, then you will find that said contract of sale was void under the Statute of Frauds and your verdict must be for the defendant."

At the close of the trial the jury returned a verdict against plaintiffs on their petition, but found for defendant on her counterclaim in the sum of $274.88.

Plaintiffs' motion for new trial was sustained by the trial court—"because of error of the court in giving to the jury, at the request of defendant, defendant's instruction number three." Thereupon defendant appealed.

No objection is raised as to the form or sufficiency of the mortgage, nor as to the regularity or sufficiency of any of the steps taken to foreclose the same, nor as to the holding of the sale of land at public vendue in such foreclosure wherein Herman Stritzel made his bid of $5200, for failure to comply with which, damages are sought herein. The only contentions are that Stritzel was incapacitated by reason of being drunk, and that in the contract of sale, the Statute of Frauds was not complied with and therefore the alleged contract was and is null and void.

The sale was conducted by Mr. Tate, an attorney, employed by the mortgagee bank to attend to the foreclosure and conduct the foreclosure sale for it.

At the trial, evidence was introduced by the respective parties *pro* and *con,* on the question of whether said Herman Stritzel, at said sale and at the time of making said bid, was so intoxicated that he did not know what he was doing; but, as the court gave only one reason for sustaining the motion for new trial, thus, in effect, overruling it on all other grounds, we need not set out the evidence on the issue of incapacity by reason of intoxication. [Yuronis v. Wells, 17 S. W. (2d) 518.]

The evidence in any way bearing upon what took place at the sale and upon the issue of whether the Statute of Frauds was complied with, so far at least as plaintiffs' side is concerned, is, in substance, as follows:

Joseph P. Tate, who conducted the sale, as agent and attorney for the bank, testified, in substance, that:

His occupation was that of a lawyer and he was employed by the said bank to sell the land under the Stubblefield mortgage on August 12, 1932; after securing a copy of the notice of sale and proof of publication from the publisher of the paper, he, in company with the president, cashier and one of the directors of the bank, went out to the Stubblefield farm, mentioned in the mortgage (the place of sale designated therein). The sale was held at one o'clock in the afternoon. Fifty people were present. He read the notice of the mortgagee's sale and asked for bids. Oscar Jose and Herman Stritzel were the main bidders; the bidding went on until Mr. Jose bid $5,150, and then it began to rain; some went under the sheds and some went into the house; Mr. Stritzel also went into the house and he (Tate) then went to the house and talked to Mr. Stritzel himself and Stritzel said

he bid $5200, and Tate asked him if that was his bid and he replied in the affirmative, and Tate told him "all right, I would accept that bid and then I went on outside and tried to get Mr. Jose to raise the bid $10 but Mr. Jose refused to bid any more and then I said, 'This property is sold to Herman Stritzel for $5,200' and I wrote that down on the mortgage deed. I had the mortgage, the notice of sale and the mortgage deed prepared and had them all in my hand at the time, attached together."

Tate further testified that after the sale was completed, he, in company with his companions heretofore mentioned, got into their car with Mr. Stritzel and went to Mr. Stritzel's home three miles distant "to get the money." No money was obtained there however, and then at five o'clock that afternoon they went to Owensville to the mortgagee bank "where Mr. Stritzel paid $37 in cash and $237.79 by check, given to him by W. O. Boyd and endorsed by Herman Stritzel, making a total payment of $274.78 and he said he would get the rest of the money next day. I offered him the deed and told him we were ready to do our part and wanted the money; I offered him the mortgage deed identified in the testimony at the bank the same afternoon; he called at my office the next day and told me he didn't have the money, but he was going out and get it and bring it in as soon as he could; two or three weeks afterwards he came to my office and said, 'Well, I just can't get the money.' A short time before January 6, 1933, I went to Mr. Stritzel's place. I took the same deed with me and I told Mr. Stritzel, 'Here is the deed, we have got to finish up the sale, we want the money.' He says, 'Well, I can't raise the money, you will have to do the best you can.' He didn't tell me that he would take the property."

Plaintiffs then offered in evidence, over the objections of defendant, the memorandum written on the margin of the mortgage deed as follows: "Sold to Herman Stritzel for $5,200." Mr. Tate, when asked if he made that memorandum in the presence of Mr. Stritzel, replied, "I don't know whether I did or not." There is no evidence that it was done in Stritzel's presence and the inference to be drawn from the hereinabove stated evidence is that Mr. Stritzel *was in the house* when, after Tate came out and tried to get Jose to bid further and Jose refused, he announced the property was sold to Stritzel and made the memorandum.

We have not been able to find in the record any evidence concerning matters set up in the reply to the effect that Stritzel took possession of the property and attempted to rent or sell it to another, save only that about thirty days after the first foreclosure sale, Stritzel asked Stubblefield "if he (Stritzel) *had to keep it,*" could he rent it to Stubblefield and the agreement was that Stubblefield would give Stritzel one-third of everything that was raised on the farm if *Stubblefield tended it.* This was nothing in the way of taking possession

of the farm, but only a conditional arrangement *if Stritzel was compelled to take the farm*. This can hardly be said to be a ratification of his alleged bid. Besides ratification does not anywhere appear in the petition. Hence it cannot form any element of the cause of action but only as a reply to the defense of incapacity from intoxication.

At the close of plaintiffs' evidence, defendant offered a demurrer thereto, but the court overruled it, defendant excepting.

Defendant then offered evidence tending to show that Stritzel was so greatly intoxicated that he didn't have knowledge or understanding sufficient to know what he was doing and was not in condition to do business with anyone.

Mr. Graf, an attorney, testified for defendant that he had known Mr. Stritzel for twenty years or more; that he was present at the sale from the beginning to the close; that the last he saw of Mr. Stritzel "he was moving heavily, staggeringly, toward the Stubblefield residence (the 'house' mentioned by Mr. Tate in plaintiffs' evidence), between seventy and 100 feet situated from the place where Mr. Tate was offering this farm for sale and I never saw him that day after that. Q. Did you see Mr. Tate make any written memoranda on the deeds at any time? A. I did not see him do any writing at all at the sale or at the close of the sale and did not see Herman Stritzel after the sale was adjourned." . . . "Q. Did you see Mr. Herman Stritzel come out from the residence or from the house before the sale was closed? A. No, sir; he never did come out that I saw."

Henry Kehr, testifying as defendant's witness, said that he was present at the sale and that during the bidding he saw Mr. Stritzel and heard him ask Mr. Aufderheide standing there, "Is this a cash sale?", and that upon Mr. Aufderheide saying, "Yes, this is a cash sale," Mr. Stritzel said, "'Well, I will have to quit bidding because I have got no money,' *and that was the last I seen of him; he went in the house.*"

Mr. Stubblefield testified that at the time of the sale he was living on the place; that he knew Herman Stritzel and saw him that day; that he was very much intoxicated, he bid on the farm at the sale and then went back into the house. Stubblefield further testified:

"He sat on the cot, leaned his head against the wall like he was asleep. Did not carry on any conversation with him during that time; he wasn't able to carry on a conversation. Mr. Joseph Tate came in there while he was sitting there, and asked him to bid more, and Herman said he didn't—he wasn't going to bid more; he didn't want the farm; he didn't have money enough to buy the place. Mr. Tate told him he didn't need much money to buy the place, to pay a part payment not exceeding $1000. Mr. Stritzel made no answer to that offer, and Mr. Tate went outside. Mr. Tate came back and said, 'They have overbid you again, Herman,' and Mr. Stritzel said he

didn't want the place, he wasn't able to buy it. Mr. Tate said, 'Herman you are plenty able to buy it,' and Herman kept repeating he wasn't able to buy it.''

"Q. How many times do you say Tate went? A. I seen him come in the house a half dozen times, and each time ask him to make a bid.

"Q. Did you ever hear Herman Stritzel make a bid inside, to Mr. Tate, on the farm? A. No, sir.

"Q. Did you ever hear him go out of the house and make another bid? A. No, sir. And finally Mr. Tate, Mr. Aufderheide, Mr. Steinback and Mr. Kramme (officers and directors of the bank) came back and told Mr. Stritzel that he bought a farm.

"Q. Then what did Mr. Herman Stritzel say? A. Oh, he said he hadn't bought no farm, acted silly.

"Q. What did Mr. Tate and the bank officers do? A. They told him he had bought a farm, to go in with them and get the papers fixed up; he said, no, he hadn't bought a farm; they told him he had plenty of money—they said, 'You said you had a barrel full of money,' and he jerked out a little change out of his pocket and took it up and says, 'Here is my barrel of money.' I don't know what became of that money. They took him and led him to the car and put him in the car.

"Q. Who led him to the car? A. Mr. Aufderheide was one of them, had him under his arm, took him from the house, one on each side, leading him to the car, and put him in the car, and drove away, going first to his home, and thence to Owensville; they followed me to the Farmers and Merchants Bank in Owensville. Mr. Aufderheide and some other one of the bunch helped him out of the car and led him through the back way and into the office door.

"Q. Tell what took place in the bank. A. They mentioned business affairs to him, and he wasn't able to take care of business affairs, that was all a silly business.

"Q. What was finally done? A. They told him he had bought a farm, and had to pay so much on it. So he took some money out of his pocket, handed it to me to count out the money he had. I counted it out to Henry Kramme; they said, 'That isn't as much as you said you had, Herman,' so he brought in something about a dividend check that he had coming from the old bank at Owensville, that they had sent him, and he had lost, he couldn't find it; so they called up Mr. Boyd to come down and give him another check, so Mr. Boyd fixed out the check, brought it to the door, and handed it to someone, so Herman Stritzel endorsed that check, and they secured the total amount of two hundred seventy and some dollars, total of the cash and the check.

"Q. Basing your opinion on the answers you have made to my questions, would you say as to whether or not Herman Stritzel understood the transactions in which he was engaged? A. I absolutely

have to say, to the best of my opinion, that he didn't know what he was doing."

The testimony in defendant's behalf as above set forth is stated here merely for the purpose of showing that the testimony on both sides is to the effect that Herman Stritzel was *not present* at the auction when his so-called bid was received and the land stricken off to him. *He was in the house.*

The section of our Statute of Frauds, specifying what agreements must be in writing, is Section 2967, Revised Statutes 1929 (3 Mo. St. Ann., Sec. 2967, p. 1835) and, so far as applicable to this case, reads as follows:

"No action shall be brought to charge any executor or administrator . . . upon any contract made for the sale of lands, tenements, hereditaments . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing *and signed by the party to be charged therewith,* or some other person by him thereto lawfully authorized, *and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.*"

Of course, all italics in the above-quoted section are the author's, and that part appearing in the second set of italics was added to the section by the amendment of March 19, 1887 (Laws of Mo., 1877, p. 195).

It is manifest from the testimony on both sides that the so-called memorandum relied on to comply with the Statute of Frauds was never signed by Stritzel, "the party to be charged therewith" nor by any other person by him thereto lawfully "authorized in writing to make said contract."

We need not go into the question of whether the memorandum "Sold to Herman Stritzel for $5,200" (for this was it as introduced in evidence) was in itself a sufficient memorandum by reason of being written on the mortgage attached to all the documents used in that transaction. The conceded facts show that the Statute of Frauds was not complied with. In the first place, the one who conducted the sale was not a trustee for that purpose named in the instrument under which the sale was being attempted to be made, nor was he a public officer conducting a judicial sale. He was employed by the mortgagee bank to conduct the sale for it, and there is no evidence whatever, that, in making the memorandum, he was acting as agent for Stritzel. Nor can he be regarded as *impliedly* Stritzel's agent, because the latter was not present at the sale when the *vital* so-called bid was made. He had left the scene of the sale, and any so-called implied agency or power to act for him (if, under the present terms of the statute, any such implied agency can be said to exist), immediately ceased. In Tull v. David, 45 Mo. 444 (decided even before the above-mentioned amendment of 1887 was enacted), it was held that at an

auction sale under a deed of trust, the trustee acting as auctioneer, is not the agent for the buyer so as to bind him by a memorandum made at the sale. [Dunham v. Hartman, 153 Mo. 625, 631.] And later in the same case at page 632, Judge VALLIANT says:

"The doctrine of agency in the auctioneer for both seller and buyer was established when the statute was such that the authority of an agent to bind his principal in a contract for the sale of land need not have been in writing, but might have been conferred orally or have been implied. [Browne on Stat. of Frauds (5 Ed.), secs. 370, 370a.] In 1887 our statute was amended so as to require the agent's authority to be in writing, since then it would be difficult to find any theory on which to base a claim on the implied agency of the auctioneer in a contract for the sale of land."

As hereinbefore stated the evidence was wholly insufficient to create a ratification of the bid or the claimed sale of the land to said Stritzel. He was told by the person interested in having the sale perfected that he "had to take" the land and all he did which is now claimed as ratification, was done on the condition that, if he "had to take it," he would do so-and-so. It would seem that ratification in such a case as this would have to be as convincing and binding as the original sale had to be. In fact it is difficult for one to see how there can be a ratification of a contract that never existed; but as heretofore stated, the matter of ratification, not being placed in the petition but only in the reply, constitutes no part of the cause of action.

In its general idea, namely, that the contract of sale was void under the Statute of Frauds, instruction No. 3 for defendant was correct. Indeed, since the evidence was conceded on the point of Stritzel's absence from the scene of the sale at the time of his alleged bid, and the absence of any compliance with such statute, the trial court could well have sustained defendant's demurrer to the evidence. However, the same result follows, from either course of reasoning. The judgment of the court in sustaining the plaintiffs' motion for new trial is reversed and the cause is remanded with directions to set the sustaining order aside and reinstate the jury's verdict and render judgment thereon. All concur.