## DUNHAM, Appellant, v. HARTMAN.

### Division One, February 5, 1900.

1. **Deed of Trust: SALE: TRUSTEE'S MEMORANDUM.** If the memorandum made on the sale book of the sheriff, who is acting as trustee, does not show what land was sold, nor for whom the sale was made, but only says, "sold to W. H. Hartman for $3,050," it is not admissible as evidence of a contract of sale in a suit to recover from Hartman damages for refusing to take the land which it is alleged was struck off to him at the foreclosure sale. Nor is it admissible until it is shown that the designated trustee had refused or was unable to act; nor until it is shown that the holder of the note requested the sheriff to execute the trust. Nor is it admissible if the memorandum is made after the bidder had refused to take the land on the ground that there were prior mortgages incumbering it.

VOL. 153 mo—40

Dunham v. Hartman.

2. ———: ———: ———: WITHDRAWAL OF BID. Between the fall of the hammer and the writing of his name in the memorandum book, the bidder may withdraw his bid, and the memorandum made after the withdrawal has no binding force against the bidder.

3. ———: ———: ———: POWER TO BIND BIDDER. Neither the trustee named in the deed of trust, nor the sheriff acting under the instrument as the substituted trustee, has any authority to bind the purchaser at the foreclosure sale by any memorandum made by him in his sale book or elsewhere. Whether acting as auctioneer or not, he is not the agent of the purchaser.

4. ———: ———: AUCTIONEER'S AGENCY. The law does not now imply that the auctioneer in the selling of land is the agent of either the seller or buyer.

Appeal from Johnson Circuit Court.—*Hon. W. W. Wood,* Judge.

AFFIRMED.

*James A. Kemper* and *Barnett & Barnett* for appellant.

The court erred in excluding the written memorandum offered in evidence by plaintiff, being the memorandum made at the sale under the deed of trust, showing that the real estate in question was sold to defendant Hartman. A sheriff, when making a sale under a deed of trust, must be considered as acting officially, and a memorandum made by him on the day of sale, of the party to whom sold and the price bid, is sufficient to satisfy the statute of frauds, and will bind both parties. Barclay v. Bates, 2 Mo. App. 139; Tatum v. Holliday, 59 Mo. 422. (a) The case of Tull v. David, 45 Mo. 444, is not in point, as the sale in that case was not made by the sheriff, but by a private party named in the deed of trust, as trustee, and hence supposed to be favorable to the party selecting him. That case recognizes the rule that where a sheriff, acting in an official capacity, makes the sale, his memorandum is sufficient to bind the parties, and further in that case the court says: "We limit our decision strictly to the case at bar." (b) The entry of the memorandum in question was made by the sheriff

in his sale book where he kept a copy of the advertisement, and hence where the land was described, and is therefore a sufficient memorandum so far as the description of the land is concerned. Stewart v. Garvin, 31 Mo. 36; Briggs v. Munchon, 56 Mo. 467.

*O. L. Houts* for respondent.

(1)  Plaintiff, in offering this property for sale, acted as trustee under the provisions of the deed of trust by appointment of the grantor and beneficiary in the deed and as their agent and not in his official character as sheriff by appointment of the court. Plaintiff was not, therefore, the agent of defendant, and could make no memorandum of sale binding on him. Tull v. David, 45 Mo. 444; Tatum v. Holliday, 59 Mo. 422; Adams v. Scales, (Tenn.) 1 Baxt. 337. Tull v. David, *supra*, settled this proposition in this State, and is decisive of this case. Since that case was decided, the legislature has emphasized the proposition and that decision by amending the statute of frauds providing that "no contract for the sale of land made by an agent shall be binding upon the principal unless such agent is authorized in writing to make said contract." Laws 1887, p. 195.   (2) . The memorandum offered was insufficient, for another reason. It did not describe the property and did not refer to, and was not connected with, any other written or printed instrument that did describe the property.

VALLIANT, J.—This is a suit to recover of defendant damages for refusing to complete a purchase of land which it is alleged was struck off to him on his bid at a foreclosure sale under a deed of trust. Upon the trial at the close of the plaintiff's evidence the court instructed the jury that under the evidence the plaintiff was not entitled to recover. Plaintiff took a nonsuit with leave, and after an ineffectual motion to set the same aside, brought this appeal.

The evidence tended to show that in 1892, the then

owners of the land executed a deed of trust to one Youngs, trustee, to secure a debt therein specified, subject to prior incumbrances referred to.    It was provided in the deed that in the case of Youngs' inability or refusal to act when the debt was due and payment not made, the then acting sheriff of Johnson county might proceed to foreclose by sale, etc., as therein directed.    Youngs did decline to act, and the holder of the debt and deed of trust requested the plaintiff in this suit, who was then the sheriff of that county, to proceed to sell according to the requirements of the deed which he did.    It was an auction sale at the courthouse door, conducted by the sheriff in person, assisted by one of his deputies who read the advertisement for him.    At this auction, the defendant bid $3,050, and the property was struck off to him.    The parties went from the place of sale to the sheriff's office apparently to close the matter and the defendant was about to write a check for the amount of his bid, when it was suggested by some one present that the sale was made subject to the prior incumbrances.    Then defendant said he "did not figure it that way," and would go and see about it.    He then went out and returned in about two hours and said he would not take the property unless he was compelled to.    After that the sheriff re-advertised and held another auction sale, at which the property was struck off to M. C. Shryack and C. H. Harrison, the highest bidders, for $725, which sale was consummated.    The second sale was about a month after the first.

Plaintiff offered in evidence the following:    "I now offer in evidence this memorandum found on page 270 of the sheriff's sale book, the memorandum made by the sheriff and the one made by the deputy sheriff, so far as can be ascertained. Which memorandum is in words and figures as follows, to wit: 'Sold to W. H. Hartman for $3,050.    Sold to M. C. Shryack and C. H. Harrison.' "    Defendant objected to this as evidence, and the court sustained the objection.    Up to this time there had been no evidence of the refusal of the trustee to act,

and the request of the holder of the note that the sheriff execute the trust, but such evidence immediately followed the ruling excluding the memorandum, but the memorandum was not again offered.  Just when and by whom the memorandum was made is not certain, the deputy sheriff testifies that he made it as soon as the land was struck off to the defendant, while the sheriff testifies that he made it himself after the defendant returned to his office the second time and informed him that he would not take the land if he was not compelled to, which was about two hours after the auction was over.  The next day a deed was tendered to defendant which he refused. What else, if anything, was on the page 270 mentioned besides the memorandum read is not shown by the evidence.  There was testimony tending to show that before offering the property for sale the sheriff announced that it was to be sold subject to the incumbrances.  Whether or not defendant was within hearing at that time, does not appear.  This was substantially all that the evidence tended to prove.

I.  If we assume that the sheriff was the implied agent of the defendant and as such authorized to make the memorandum required by the statute of frauds to bind him, the plaintiff's case fails because the memorandum attempted to be shown in evidence is itself insufficient.  All that we are told of the memorandum is that it was made on the sheriff's sale book and is in these words:  "Sold to W. H. Hartman for $3,050."  It was perhaps intended to be shown that this memorandum was written on a page in the book in which was the notice of sale containing the names of the parties, and a description of the property, but if the page contains anything of that kind it was not offered in evidence and the record does not show it.  In Ringer v. Holtzclaw, 112 Mo. loc. cit. 522, it is said:  "All the authorities are agreed that the memorandum must state the contract with reasonable certainty, so that its essential terms can be ascertained from the writing itself without resort to parol evidence."  This memorandum

does not show what was sold, nor for whom the sale was made. Besides we are left in doubt between the plaintiff's two main witnesses as to who made the memorandum and when it was made.    Ordinarily when the sheriff is acting officially it makes no difference whether he or his deputy does the act but in this instance it does make a difference, because if the sheriff did it, it was not done until after the controversy had arisen and after the defendant had refused to consummate the sale, two hours after the auction was over.    If there was an implied agency that agency was revoked by the defendant's repudiation of the transaction.    Certainly the agent could not act in spite of his principal, and do for him in his presence what he refused to do for himself.    Between the fall of the hammer and the writing of his name in the memorandum, the bidder has a *locus penitentiae*, and may withdraw his bid.    [Pike v. Balch, 38 Me. 302; Gwathney, Dey & Co. v. Cason, 74 N. C. 5.]

The memorandum was:    "Sold to W. H. Hartman for $3,050.    Sold to M. C. Shyrack and C. H. Harrison."    We can not reconcile the statements of the sheriff and his deputy by concluding that the sheriff was referring to the Shyrack and Harrison part of the memorandum, because he said he made the memorandum directly after defendant came to his office the second time that afternoon and refused to take the property, which was about two hours after the sale.    The sale to Shyrack and Harrison was nearly a month after.    The recognizing of the auctioneer as the agent of both parties in such transactions is one of those judicial encroachments on the terms of the statute of frauds that we inherited with the statute itself from England, and grew out of what the courts considered a necessity; but having gone to the extent of creating an agent for the party sought to be charged, the courts have always required that his act should be proven with reasonable certainty, and this the plaintiff failed to do in this case.

II.    But was the sheriff acting in his official capacity here, and was he for this purpose the defendant's agent?    In

Tull v. David, 45 Mo. 444, it was held that at an auction sale under a deed of trust, the trustee acting as auctioneer is not the agent for the buyer so as to bind him by a memorandum made at the sale. The ground of the decision is that to construe the trustee under such circumstances to be the agent of the bidder would be to make one party to the supposed contract the other's agent to make the contract. The court quotes from Bent v. Cobb, 9 Gray, 397: "The great mischief intended to be prevented by the statute would still exist if one party to a contract could make a memorandum of it which could absolutely bind the other. If such were its true construction it would be feeble security against fraud, or, rather, it would open a door for its easy commission . . . . . . . Nor can it make any difference, as to the power of the vendor to make the memorandum binding on the vendee, that the sale is made by the former in his representative or fiduciary character as executor, administrator, guardian or trustee." This court in that case further say: "We are referred to no decided case that adopts the principle contended for by the plaintiff in this suit. The nearest approach to it is found in the case of Wiley v. Robert, 27 Mo. 388, and Stewart v. Garvin, 31 Mo. 36, where it is held that a sheriff, in selling lands under an order of court in proceedings for partition, is a competent agent of the parties to make a binding memorandum of the sales made by him. . . . . . . But the sheriff in such cases acts simply in the execution of a judicial power of sale, and not in strictness as a trustee. No title is vested in him. He acts merely as the instrument of the law in effecting the sale and conveyance. He is a public officer, and holds his position under the provisions of law, and not as the mere appointee of private parties."

In Tatum v. Holliday, 59 Mo. 422, it is held that where a trustee dies and the court appoints the sheriff to foreclose the deed of trust, the sheriff acts in his official capacity; and the court say, *arguendo*, that he is responsible on his bond for his act. There the trustee had died and the circuit court had

made the appointment of the sheriff upon the petition of the party in interest as required by the statute (Wag. Stat. 1872, p. 1347; sec. 8683, R. S. 1889). Upon that authority the St. Louis Court of Appeals decided likewise in Barclay v. Bates, 2 Mo. App. 139. If the condition arises and the court appoints the sheriff to foreclose the deed of trust as the statute requires he is as much bound to perform that duty as he would be under a decree of sale to foreclose a mortgage or to sell for partition and his official bond covers his acts. But an individual can not impose official duty on the sheriff and the sheriff can not by contract enlarge his official character.

In the case at bar the sheriff was not appointed by the court nor in pursuance of the statute, but by an individual and in pursuance of the terms of a private deed. In such case he is no more acting in his official capacity nor liable as such, than he would be if he were employed to assist in any other private business. Whereas when he is appointed by the court, in the words above quoted, "he acts simply in the execution of a judicial power," but when he is employed by an individual he is simply a substituted trustee. In the one case he is responsible as sheriff on his bond, in the other he is only liable as an individual. In the one case, if the law were still as it was when Stewart to use v. Garvin, 31 Mo. 36; Tatum v. Holliday, 59 Mo. 422; Springer v. Kleinsorge, 83 Mo. 152, were decided he would have the authority as the implied agent of the bidder to make a memorandum to bind him in the face of the statute of frauds, in the other he would have no such authority.

We hold that in this case the plaintiff was only a substituted trustee acting in his individual and not in his official capacity and had no authority to bind the defendant by any memorandum he may have made.

III. The doctrine of agency in the auctioneer for both seller and buyer was established when the statute was such that the authority of an agent to bind his principal in a contract for the sale of land need not have been in writing, but might

have been conferred orally or have been implied.  [Browne on Stat. of frauds (5 Ed.), secs. 370, 370a.]  In 1887 our statute was amended so as to require the agent's authority to be in writing, since then it would be difficult to find any theory on which to base a claim on the implied agency of the auctioneer in a contract for the sale of land.

IV.  There is nothing in the plaintiff's case that particularly commends it to one's sense of justice.  The fact that at a resale within a month he sold this property for $725 which he wanted to force on the defendant for $3,050 gives this case the aspect of an effort to take a hard advantage.

We think the learned trial judge had the right conception of the case when he instructed for a nonsuit.  The judgment is affirmed.  *Brace, P. J.,* and *Robinson, J.,* concur; *Marshall, J.,* concurs in result.