**Grover C. WILCHER and John E. Robertson, Plaintiffs-Appellants,**

v.

**Thelma McGUIRE, Defendant-Respondent.**

**No. KCD 27914.**

Missouri Court of Appeals, Kansas City District.

June 1, 1976.

---

1. § 195.020, RSMo 1969, proscribes possession of certain controlled substances, including marihuana.

William J. Hill, Kansas City, for plaintiffs-appellants.

John C. Milholland, Harrisonville, for defendant-respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special JJ.

TURNAGE, Presiding Judge.

Plaintiffs, Wilcher and Robertson, brought suit for specific performance of an alleged contract for the sale of real estate against the defendant owner, McGuire. McGuire raised as her primary defense the Statute of Frauds, Section 432.010, RSMo 1969. The trial court found for the defendant.

On this appeal plaintiffs urge the auction sale conducted was (1) "without reserve" and thus the sale was completed at the time the auctioneer knocked down the high bid, and (2) the requirements of the Statute of Frauds were fully met. Affirmed.

McGuire entered into a written agreement with Dick Dewees for Dewees to sell two-hundred acres of land by auction. The agreement provided: the selling price would be determined by competitive bidding at the auction; the land would be offered in three tracts and also as a whole; the sale was subject to twenty-four hour confirmation and acceptance by the owner.

Prior to the day of sale, Dewees drew a sale bill which was later circulated to prospective buyers and was available on the land. This sale bill advised the two-hundred acres would be offered in three tracts—an east, center and west tract. The east and center tracts each contained sixty acres and the west tract contained eighty acres. The sale bill also stated "land sells subject to confirmation of owner. Announcements made sale day take precedence."

On the day of sale Dewees opened the sale by making introductions of some people attending, including Charles Darby, who was Mrs. McGuire's attorney, and Charles Hight, an attorney from Harrisonville who was hired by Dewees to handle the contract of sale with the high bidder. Dewees fur-

ther stated "many of you know the reason for the sale. Mrs. McGuire bought this property last September and, just to be blunt, she has got a mortgage payment due on the first of June that she can't meet. The only way she can meet it is to sell off part of the property or sell off all of the property. As a result, the property is for sale and some or all of it is going to sell today."

After the bidding was complete on the three tracts and on the whole, Wilcher and Robertson were the high bidder on one of the three tracts, and on the whole. Dewees told the crowd that he, Mr. Darby and Mr. Hight, would go into the house and confer with Mrs. McGuire and determine what she wanted to do and the high bidder would thereafter be advised. Thereupon a conference took place in the house and the result of that conference provides the only conflict in the evidence in the case. Dewees testified that Mrs. McGuire, after about a two-hour conference, decided to sell the east and west tracts and to obtain a loan on the center tract. He stated this would give her sufficient funds to meet the impending mortgage payment. Dewees stated that he and Mr. Hight went outside and summoned Wilcher and Robertson inside the house after this decision was made and advised them their bid was being accepted on the one tract only on which they were the high bidder. Thereupon, Mr. Hight completed the blanks in the contract he had previously drawn to show the purchase price with the names of Wilcher and Robertson as the buyers and the description of the tract they were to purchase. Robertson and Wilcher signed the contract and Robertson wrote a check for ten percent of the purchase price as a down payment. Thereupon McGuire suddenly announced she had to leave and left the house. Thereafter the contract was not signed by McGuire or anyone on her behalf. No one accepted the down payment from Robertson or Wilcher with the result Robertson retained the check he had previously written. The next day Robertson and Wilcher were notified McGuire was not going to sell the tract to them.

McGuire testified that after Dewees, Hight and Darby came into the house, a long discussion ensued as to what should be done. She stated Dewees and Gearhart, a real estate broker working with Dewees, attempted to pressure her into accepting some or all of the bids by telling her if she did not sell, the buyers would get away and she would lose her land. McGuire maintained she never stated she would accept any bid but only said she wanted to pray about the matter and reach a decision the next day. She stated she left the house without ever seeing the contract or signing it.

■ Plaintiffs' main argument centers on the statement made in the sale bill "announcements made sale day take precedence." Plaintiffs argue this nullifies the statement also contained the sale bill "land sells subject to confirmation of owner", and when Dewees announced at the beginning of the sale that McGuire had to sell the property to meet a payment and part or all of the property was going to sell on that day constituted a true auction sale without reserve. The words "without reserve" are words of art and mean that in making such an announcement the owner "enters into a collateral contract with all persons bidding at the auction that he will not withdraw the property from sale, regardless of how low the highest bid might be (citations omitted). Therefore, the highest bona fide bidder at an auction 'without reserve' may insist that the property be sold to him or that the owner answer to him in damages (citations omitted)." *Drew v. John Deere Company of Syracuse, Inc.,*, 19 A.D.2d 308, 241 N.Y. S.2d 267, 269[1, 2] (1963).

Thus, in this case the plaintiffs argue that by stating all or part of the property would be sold on that day, the auctioneer was stating the sale was to be "without reserve".

■ It should first be noted that "an auctioneer's authority, when based upon an express contract or instrument, is governed by its terms." 7 C.J.S. Auctions and Auctioneers, ¶ 6a. Here the authority which the auctioneer had by his written agree-

ment with McGuire was that any sale he made was subject to her twenty-four hour confirmation and acceptance. Thus, Dewees had no power or authority to make any sale without the confirmation and acceptance by McGuire. Further, it has long been the rule in Missouri that "[t]he printed conditions under which a sale by auction proceeds cannot be varied or contradicted by parol evidence of the verbal statements of the auctioneer made at the time of sale, without it be for the purpose of proving fraud." *Chouteau et als. v. Goddin et al.*, 39 Mo. 229, 249 (1866).

The provision in the sale bill that the land would sell subject to confirmation by the owner was a recognition of the fact the owner had only authorized a sale "with reserve" in her agreement with Dewees. He could not avoid that restriction placed by the owner on his power in conducting the auction by either a statement in the sale bill or by an announcement made on sale day. The statement "announcements made sale day take precedence" could not and did not modify the previous statement that the sale was subject to the confirmation of the owner.

Thus, Dewees had no authority to change the nature of the sale by any announcement he made on the sale day from one being "with reserve" to one "without reserve". However, aside from his want of authority, his statement that part or all of the property would be sold that day would not constitute a sale "without reserve". As stated in *Drew* at 241 N.Y.S.2d 270[3], "The statement that the sale would be made to the highest bidder is not the equivalent of an announcement that the auction would be 'without reserve' . . ."

Under all of the law applicable to auction sales, the announcement made by Dewees did not convert the sale to one "without reserve". In this situation, McGuire had the right to refuse to make any sale prior to the time she accepted any bid. Plaintiffs' first point is, therefore, without merit.

Plaintiffs next contend the evidence showed McGuire confirmed the sale in compliance with the Statute of Frauds. In this argument, plaintiffs contend first, McGuire changed the sale to be one without reserve. This contention has just been ruled adversely to plaintiffs. Plaintiffs next contend McGuire must be held to an acceptance of their bid because of their version of the conference. They contend the conference took place in the presence of McGuire and her attorney Mr. Darby, and statements were made that McGuire would sell to plaintiffs the single tract on which they were the high bidder and the contract was completed and signed by them without protest on the part of either McGuire or her attorney. This argument seems to reduce itself to a statement that by her silence McGuire accepted the plaintiffs' bid.

It should be observed that auction sales of real estate are subject to the Statute of Frauds. *Dunham v. Hartman*, 153 Mo. 625, 55 S.W. 233 (1900), 7 Am.Jur.2d Auctions and Auctioneers, § 34.

Plaintiffs did not produce any evidence of the signing of the contract with Wilcher and Robertson by McGuire or by anyone on her behalf. Plaintiffs contend, however, that the typing in the contract of McGuire's name as being the seller was sufficient to take the agreement out of the Statute of Frauds. This could not satisfy the Statute because there was no writing by which McGuire authorized any contract to be made with plaintiffs. The Statute requires a writing to be signed by the person to be charged or by someone authorized by such person. The authorization to sign a contract must also be in writing by the terms of the Statute. This is also the holding in *Dunham v. Hartman, supra.*

Since plaintiffs could not show any agreement signed by either McGuire or anyone authorized in writing to sign an agreement in her behalf, there was no agreement which plaintiffs could enforce because of the Statute of Frauds. The agreement signed with Dewees only authorized him to conduct an auction sale with McGuire to confirm and accept such sale at

a later time. That agreement did not authorize anyone to enter into any agreement for sale of McGuire's land which would bind her. Absent an agreement signed by McGuire or in her behalf by someone authorized in writing to do so, plaintiffs may not enforce their alleged agreement.

The scope of review of this equity case requires that the judgment be affirmed unless there is no substantial evidence to support it, or it is against the weight of evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). There is not only substantial evidence in this case to support the judgment, but there is an absence of evidence to support any other judgment.

Judgment affirmed.

All concur.