Thelma McGUIRE, Plaintiff-Respondent,

v.

Grover C. WILCHER,

and

John E. Robertson, Defendants-Appellants.

No. WD 34960.

Missouri Court of Appeals, Western District.

Feb. 19, 1985.

Rehearing Denied April 2, 1985.

Application to Transfer Denied May 29, 1985.

William J. Hill, Kansas City, for defendants-appellants.

H. George Lafferty, Jr., Kansas City, for plaintiff-respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

This is an action for defendants' alleged malicious prosecution of an earlier civil proceeding. The jury returned a verdict in favor of the plaintiff, and judgment was entered accordingly. Defendants appeal, and we reverse and enter judgment for them.

As the parties state in their briefs, the facts of this case are not in dispute. This malicious prosecution action results from an earlier civil proceeding brought by these defendants, Grover Wilcher and John Robertson, which was finally laid to rest by this court in *Wilcher v. McGuire*, 537

S.W.2d 844 (Mo.App.1976). That first civil proceeding arose from the attempted auction sale of farm property owned by the plaintiff Thelma McGuire, defendant in the first action.

Before the day of sale, the auctioneer, Dick Dewees, circulated a sale bill describing the property and advising bidders that "land sells subject to confirmation of owner. Announcements made sale day take precedence." Before the auction day, Mrs. McGuire had contracted in writing with Mr. Dewees that the selling prices for separate tracts of the property and the property as a whole were to be determined by competitive bidding and that any proposed sale was subject to a twenty-four hour acceptance and confirmation by the owner.

Mr. Wilcher, a licensed and practicing attorney, and Mr. Robertson were high bidders at the auction sale on both the property as a whole and on tract three of the property.

Mrs. McGuire, her attorney, and the auctioneer conferred at the conclusion of the auction to consider the bids. In the first civil proceeding, Mr. Dewees testified that Mrs. McGuire agreed to accept the Wilcher and Robertson bid for tract three, but she testified to the contrary, alleging only that she said she would reach a decision the next day.

At the conclusion of this first conference, Messrs. Wilcher and Robertson were invited in and advised by Mrs. McGuire's attorney that their bid on tract three was accepted. Thereupon, the attorney partially filled out a previously prepared land sale agreement by inserting the purchase price, the description of the subject property, and the names of Wilcher and Robertson as buyers. Mrs. McGuire's name had already been typed in as seller. Wilcher and Robertson signed the contract and tendered a ten per cent down payment on the property. At that point, Mrs. McGuire left the meeting without signing the contract or accepting the down payment. The next day the buyers learned that she had rejected their bid.

Upon hearing that, Mr. Wilcher for three evenings researched the law pertaining to auction sales and the Statute of Frauds. He discovered a lack of authority in Missouri pertaining to the circumstances of the aborted auction sale. After his research, Wilcher and Robertson filed suit against Mrs. McGuire for specific performance of the alleged agreement to sell tract three. Mr. Wilcher represented himself and Mr. Robertson in the early stages of the suit, but they later retained another attorney who conducted the action from that point.

Wilcher and Robertson principally relied upon two theories in their action for specific performance. First, they argued that the statement in the sale bill that "announcements made sale day take precedence" nullified the sale bill provision that "land sells subject to confirmation of owner." The argument was essentially that the sale was without reserve and thus not subject to owner acceptance. They also asserted that Mrs. McGuire by remaining silent when they signed the land contract accepted their bid, and that the typing in of Mrs. McGuire's name in the contract as seller constituted her signature and thus satisfied the Statute of Frauds.

In the first proceeding defendant McGuire filed a number of motions seeking summary judgment and dismissal on the pleadings and on the evidence. All were ruled against her. A full bench trial was conducted, the parties submitted briefs on the law, and the court found in favor of the defendant Mrs. McGuire. This court affirmed the judgment.

Thereafter, Mrs. McGuire brought this action for malicious prosecution, naming Wilcher and Robertson as defendants. The case was tried to the jury, and defendants' motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence were overruled. The jury found in favor of plaintiff McGuire. Defendants' motion for judgment notwithstanding the verdict was overruled, and they filed a timely notice of appeal.

Defendants raise two points on appeal. *First,* they contend that the court erred in rejecting their various motions challenging plaintiff's petition because it fails to state a claim in that it does not sufficiently allege their lack of probable cause for bringing the earlier action. Second, defendants assert that, since the facts concerning probable cause for initiation of the earlier suit are not in dispute, the question of probable cause was one of law for the court and the court erred in submitting the issue to the jury. Defendants conclude that as a matter of law they did not lack probable cause for the bringing of their specific performance action.

■ In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must examine the evidence in a light most favorable to the party against whom the judgment is sought. *Amish v. Walnut Creek Development, Inc.,* 631 S.W.2d 866, 870 (Mo.App.1982). We must give the party against whom judgment is sought the benefit of all reasonable inferences from the evidence, disregarding evidence to the contrary. *Id.* In applying the preceding standard, we hold that as a matter of law defendants had probable cause to initiate their earlier civil action.

■ We need not address defendants' first point, because we agree with their second point on appeal and find it controlling. As the parties correctly conclude in their briefs, the facts surrounding the issue of probable cause are not in dispute. Where the facts concerning the issue of want of probable cause in a suit for malicious prosecution are not in dispute the issue becomes one of law to be decided by the court. *Dodson v. MFA Insurance Co.,* 509 S.W.2d 461, 467–68 (Mo.1974). The trial court in its order denying defendants' motion for judgment notwithstanding the verdict suggests that even though the facts are not disputed it could not rule as a matter of law on the issue of want of probable cause. The rule in Missouri is clear that where no factual dispute exists on the issue it becomes a matter of law for the court to decide. *Id.* The role of the jury in a malicious prosecution action is more limited than in the usual civil proceed-

ing. *See*, Annot., 87 A.L.R.2d 183, 188 (1963).

■ The question is, therefore, whether the defendants lacked probable cause to bring their earlier action. Defendants concede that the other elements of malicious prosecution are present and they recognize that the jury may infer malice from the facts showing a lack of probable cause. *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628 (Mo.1977) (en banc).[1] In *Haswell* the court defined probable cause for the initiation of a civil action to consist of (1) the plaintiff's belief in the alleged facts (2) based on circumstances sufficient reasonably to induce such belief by a person of ordinary prudence in the same situation, plus (3) a reasonable belief by that person that under such facts the claim may be valid under the applicable law. *Id.* at 633.

The facts of this case are not disputed so the issue of probable cause turns on the third part of the above definition. The defendants here made a mistake of law in deciding to bring their earlier action, and we must now decide whether it was reasonable for them to believe that their claim may have been valid under the applicable law. They need not have been correct in determining the validity of their claim, but their belief in its validity must have been reasonable. *Id.*

The determination of reasonable belief will always depend upon the particular facts of the case. One distinguishing characteristic of this action is that Mr. Wilcher is an attorney and he decided to bring the earlier suit after personally researching the law. Therefore, we must look at the facts of this case from the standpoint of what the reasonable belief of the ordinary, prudent attorney would be in the circumstances.

Missouri case authority provides us with little guidance because no Missouri case is that factually similar to our case. In the earlier suit brought by the defendants in this case current authority was lacking on the issues, and we may fairly conclude that the legal validity of their claim was uncertain. Restatement (Second) of Torts § 675, Comment f, provides us with some direction in determining reasonable belief in the validity of a claim where that validity is uncertain. It states as follows:

If the legal validity of a claim is uncertain, the person who initiates the civil proceeding may believe that his claim is meritorious, but he can have no more than an opinion that the chances are good that the court might decide to uphold it. The question is not whether he is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim might be sustained was a reasonable one. To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority has been modified or rejected. To subject those who challenge this authority to liability for wrongful use of civil proceedings might prove a deterrent to the overturning of archaic decisions. The law of deceit might be quite different if the plaintiff in Palsey v. Freeman, (1789) 3 T.R. 51, 100 Eng.Rep. 450, had been subjected to the risk not only of an adverse decision, but also of an action for wrongful civil proceedings in the event of failure.[2]

In the action brought by Wilcher and Robertson, they argued that the language "announcements made sale day take precedence" in the sale bill turned the auction into one without reserve. This argument

---

**1.** *See, Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo.1984) for an exhaustive discussion of the element of malice in a malicious prosecution action arising from a criminal prosecution.

**2.** In *Haswell v. Liberty Mutual Ins. Co., supra*, the supreme court relied in part upon § 675 in formulating the current Missouri definition of probable cause for bringing a civil proceeding.

was eventually rejected by this court in *Wilcher v. McGuire, supra,* but the court relied upon the fact that Mrs. McGuire had a written agreement with the auctioneer in which she retained the right to accept and confirm sales for a twenty-four hour period after the completion of the auction. *Id.* at 846–47. The court of appeals held that this agreement controlled the terms of the auction sale, but the court cited no authority for this proposition. Nowhere in the *Wilcher v. McGuire* opinion does the court state that the bidders were aware of the terms of the agreement between the seller and the auctioneer. What the result of plaintiff's argument on this point would have been without the agreement between the seller and the auctioneer we cannot say, but we do conclude that enough doubt clouded this point that Wilcher and Robertson might reasonably have believed that they had a valid claim.

In their action for specific performance, Wilcher and Robertson also alleged that the auctioneer's oral statement on the day of the sale to the effect that the property would be sold that day resulted in the auction being without reserve. The court also rejected that contention on the ground that the printed conditions under which an auction is conducted cannot be varied by parole evidence. *Id.* at 846. As we have already noted, Wilcher and Robertson apparently were not aware of the agreement between Mrs. McGuire and Mr. Dewees. The court relied upon *Chouteau v. Goddin,* 39 Mo. 229, 249 (1866), as authority for its ruling. *Id.* 537 S.W.2d at 847. *Chouteau* is an 1866 decision, and Wilcher and Robertson could have reasonably concluded that the rule of that case was subject to change or modification in light of the developments in the law of contracts over the past one hundred years.

Even if one could conclude that the auction sale was clearly with reserve, the auctioneer did testify at trial that Mrs. McGuire had accepted the buyers' bid on tract three. Mrs. McGuire denied the auctioneer's statement, but Wilcher and Robertson could have reasonably concluded that a trier of fact might believe the auctioneer and disbelieve Mrs. McGuire. If the jury believed the auctioneer's testimony, then, even though the sale was with reserve, Mrs. McGuire had exercised her option in favor of the potential buyers, and the buyers would have been entitled to relief.

In the first action, Mrs. McGuire asserted that the agreement signed by the buyers did not comply with the Statute of Frauds. § 432.010 R.S.Mo.1978. The court in *Wilcher v. McGuire, supra,* held that the Statute of Frauds applies to auction land sales and that because Mrs. McGuire had not signed the agreement relied upon by the buyers it did not comply with the statute. Wilcher and Robertson claimed that the typing in of Mrs. McGuire's name as seller constituted her signature on the contract. The court of appeals was not persuaded by the argument and held that the Statute of Frauds requires an agent to have written authorization from his principal in order to sign a land sale contract for his principal. The court relied upon *Dunham v. Hartman,* 153 Mo. 625, 55 S.W. 233 (1900), for its holding. The sellers were unable to produce any written authorization.

Our purpose here is not to re-decide *Wilcher v. McGuire* but to decide whether Wilcher and Robertson could have had a reasonable belief in the validity of their claim for specific performance. *Dunham v. Hartman* is a 1900 decision which involved an auction foreclosure sale of realty conducted by a local sheriff. The bulk of the decision discusses the issue of whether the sheriff was acting in his official capacity or as the agent of a party in the case. The *Dunham* court concluded that he was an agent and, therefore, that to bind his principal he needed written authorization, which he lacked. No showing of any authorization at all was made in the *Dunham* case. The circumstances of *Wilcher v. McGuire* are distinguishable in that the issue in *Wilcher* concerned the auctioneer's authority to sign an agreement for Mrs. McGuire. Some form of written authority was given by Mrs. McGuire to the auction-

eer. The factual circumstances of the cases are sufficiently distinguishable so that Wilcher and Robertson could have reasonably concluded that the 1900 *Dunham* case would not preclude their claim.

The *Dunham* decision also addresses the issue whether the memorandum "sold to W.H. Hartman" in the sheriff's sales book was a sufficient writing to satisfy the Statute of Frauds. The court decided that it did not satisfy the statute. But the writing relied upon by Wilcher and Robertson is much more complete since it describes the property to be sold, names the seller and contains the buyers' signatures. Once again, we must conclude that Wilcher's and Robertson's assessment of the validity of their writing was reasonable in the face of a distinguishable 1900 Missouri decision.

To hold that Wilcher and Robertson lacked probable cause to bring their suit for specific performance would conflict with the policy set forth in Restatement (Second) of Torts, § 675, Comment f. Perhaps judged by hindsight the defendants here may not have pursued the soundest course in bringing their specific performance action, but the dearth of authority current and directly applicable to their circumstances was such that they reasonably could have believed "that under such facts their claim may be valid under the applicable law." *Haswell v. Liberty Mutual Ins. Co., supra,* 557 S.W.2d at 633.

Respondent has filed a motion for damages for frivolous appeal. Obviously, since we find in favor of appellants in this case, respondent's motion must be denied.

For the foregoing reasons, we reverse the judgment of the circuit court and enter judgment in favor of the defendants.

All concur.