779 F.2d 466
 John Charles McANINCH, Executor of the Estate of John W.
McAninch; George Droege; Mrs. Chester Thompson and Jerald
A. Thompson, d/b/a Thompson & Sons; Don J. Gatens; John V.
Hansen; Kendall Oden; Paul Bettin; Earl Galloway; James
R. Miksch; Ralph DeBruin; Ed Crall; Frank Dirks; Fred
Olson; Orval L. Miller; Frank Rhodenbaugh and Albia Sales
Company, Inc., Appellants,
v.
TRADERS NATIONAL BANK OF KANSAS CITY, Appellee.
John Charles McANINCH, Executor of the Estate of John W.
McAninch; George Droege; Mrs. Chester Thompson and Jerald
A. Thompson, d/b/a Thompson & Sons; Don J. Gatens; John V.
Hansen; Kendall Oden; Paul Bettin; Earl Galloway; James
R. Miksch; Ralph DeBruin; Ed Crall; Frank Dirks; Fred
Olson; Orval L. Miller; Frank Rhodenbaugh and Albia Sales
Company, Inc., Appellants,
v.
John H. KREAMER; William L. Turner; Gage & Tucker; Wayne
H. Hoecker; George Coughlin; Thomas J. Guilfoil
and General Bancshares Corporation, Appellees.
 Nos. 85-1215, 85-1216.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 9, 1985.
Decided Dec. 13, 1985.
 
 William Pickett, Kansas City, Mo., for appellants.
 James Benjamin, Russell Jones, and Penni Johnson, Kansas City, Mo., for appellees.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge and WOLLMAN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 These consolidated appeals arise from two malicious prosecution actions. Between September 2, 1975 and January 20, 1976, appellants purchased cattle at the Milan Livestock Auction. In July, 1976 Traders National Bank (Traders) filed conversion actions against appellants, alleging that appellants had purchased the cattle subject to the bank's security interest. The conversion actions terminated in appellants' favor. Thereafter, appellants filed a malicious prosecution action against Traders and an action against Traders' counsel, the law firm of Gage & Tucker and four of its members (Gage & Tucker), Traders' holding company, General Bancshares, and Thomas J. Guilfoil. In case No. 85-1215, appellants appeal from a judgment of the district court[1] entered upon a jury verdict in favor of Traders. In case No. 85-1216, appellants appeal from an order granting summary judgment in favor of Gage & Tucker, General Bancshares, and Guilfoil. We affirm.[2]
 
 
 2
 The relevant facts can be summarized as follows. In September and December of 1975 Traders, with the participation of the Bank of St. Louis (BOSL),[3] made two loans totalling $1,900,000.00 to Ray Olson of Milan, Missouri. Ray Olson and his wife owned more than 95 per cent of the stock in the Milan Livestock Auction. The loans were secured by agreements pledging "all livestock now owned or hereafter acquired by Debtor." On January 12, 1976 Ernest Harms, a loan officer at Traders, went to Milan to inspect the cattle securing the loan. After Harms could not locate any cattle, he informed officials at Traders and BOSL. Charles Oliver, president of Traders, contacted Gage & Tucker to take whatever steps were necessary to protect the bank's security interest. On January 14, 1976 John Kraemer and Peter Granat of Gage & Tucker began work on the case. Within a few days, officials from Traders and BOSL went to Milan to investigate. Later Granat discussed the matter with BOSL's counsel, Thomas J. Guilfoil, and on January 22, 1976 Granat requested a state court injunction to prevent Olson and the livestock auction from disposing of assets pending the outcome of a suit on the promissory note. On February 6, 1976 the state court issued an injunction and attachment order.
 
 
 3
 On March 23, 1976 William Turner, the Gage & Tucker partner who was supervising the case, asked George Coughlin, a Gage & Tucker associate, to research the question whether Traders' security interest could be "traced" to the cattle purchasers. In a memorandum dated April 7, 1976, Coughlin concluded that "[b]ased on the facts presently known and applying the [applicable] legal standards, it would appear that Traders National Bank duly perfected a security interest in the 4,460 head of cattle sold by Olson through the Milan Livestock Auction. This security interest continued in the cattle after their sale to third party purchasers and thereafter." In the memo, Coughlin assumed that the cattle had been purchased and sold on a short term basis and had not been pastured or acquired for fattening or grazing. Based on Gage & Tucker's extensive investigation which revealed, among other things, that Olson owned an 812 acre ranch and 26,260 pounds of corn and leased 2,000 acres of land on which he grew hay, Coughlin concluded that Olson was a farmer.
 
 
 4
 Coughlin's legal analysis was based on Secs. 9-109 and 9-307 of the Uniform Commercial Code (UCC), R.S.Mo. Secs. 400.9-109 and 400.9-307. According to the memo, Traders' security interest in the cattle was dependent upon whether the cattle were "farm products" or "inventory" as defined in the UCC. Good faith buyers of inventory take free of a security interest but buyers of farm products do not. Section 9-109 defines farm products as "crops or livestock or supplies used or produced in farming operations ... and are in possession of a debtor engaged in raising, fattening or other farm operation." Coughlin's theory of recovery against the purchasers of the cattle was that the cattle were farm products because they were livestock in possession of a farmer. Under Coughlin's theory, the fact that the cattle were not used or produced in farming operations was irrelevant.
 
 
 5
 Coughlin's memo was given to Jack Minton, president of BOSL, a director of Traders, and an officer and director of General Bancshares, to Oliver, and to Guilfoil. After some discussion between Turner and Guilfoil concerning the parties to a suit and the fee arrangements and after obtaining authorization to file suit from Oliver, who believed that Guilfoil and Minton concurred in the decision, in July 1976 Gage & Tucker filed a state and two federal conversion actions against the cattle purchasers. During discovery, Gage & Tucker encountered unexpected evidentiary problems, including changed testimony regarding Olson's status as a farmer. Gage & Tucker advised Traders that because of the problems a favorable judgment on the conversion suits was unlikely and advised Traders to dismiss the suits without prejudice. In November, 1977 the state action was dismissed without prejudice. In December, 1977 the federal district court entered summary judgment with prejudice against Traders.
 
 
 6
 In 1978 appellants filed a malicious prosecution action against Traders in federal district court. In 1982 appellants filed a malicious prosecution action against Gage & Tucker, General Bancshares, and Guilfoil. In March, 1983 the cases were consolidated for trial. Both sides moved for summary judgment, alleging that the material facts were undisputed. Prior to trial, the district court orally granted motions for summary judgment in favor of Gage & Tucker, General Bancshares, and Guilfoil, finding that as a matter of law appellees had probable cause to file the conversion actions. The district court denied Traders' motion for summary judgment. In addition, on appellees' motions, the district court dismissed Albia Sales, Inc. as a plaintiff, finding that Albia lacked capacity to sue. The remaining plaintiffs went to trial against Traders. The jury returned a verdict in favor of Traders.
 
 
 7
 In this diversity case, it is undisputed that Missouri law applies. At the outset we note that "Missouri law does not favor suits in malicious prosecution[,]" Zahorsky v. Griffin, 690 S.W.2d 144, 151 (Mo.App.1985), and that "[t]he role of the jury in a malicious prosecution action is more limited than in the usual civil proceeding." McGuire v. Wilcher, 689 S.W.2d 719, 721-22 (Mo.App.1985). See also Hernon v. Revere Copper and Brass Co., Inc., 494 F.2d 705, 707 (8th Cir.) ("the general rule is that suits for malicious prosecution are viewed with disfavor and are to be carefully guarded against"), cert. denied, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974).
 
 
 8
 Under Missouri law, "[t]o maintain a cause of action in malicious prosecution, a plaintiff has the burden of proving that the defendant instituted the original judicial proceeding without probable cause and with malice, the proceeding terminated in the plaintiff's favor, and the plaintiff was damaged." Zahorsky v. Griffin, 690 S.W.2d at 147. "The Supreme Court of Missouri has recognized the definition of probable cause for the initiation of a civil action to consist of 'a belief in the facts alleged, based on sufficient circumstances to reasonably induce such a belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under the facts the claim may be valid under the applicable law.' " Id. at 151, quoting Haswell v. Liberty Mutual Ins. Co., Inc., 557 S.W.2d 628 (Mo. banc 1977). "Where facts concerning the issue of want of probable cause in a suit for malicious prosecution are not in dispute the issue becomes one of law to be decided by the court." McGuire v. Wilcher, 689 S.W.2d at 721.
 
 
 9
 Appellants argue that the district court erred in granting summary judgment in favor of Gage & Tucker because appellants established that Gage & Tucker acted without probable cause as defined in Haswell. Appellants assert that the undisputed facts reveal that Gage & Tucker conducted an inadequate factual investigation and had an unreasonable belief that the facts stated a conversion claim. Gage & Tucker counters that under Missouri law when an attorney is a defendant in a malicious prosecution action a plaintiff is held to a higher standard of proof. Relying on Henderson v. Cape Trading Co., 316 Mo. 384, 289 S.W. 332, 336 (1926), Gage & Tucker asserts that a plaintiff can prevail only on a showing that the attorney had "actual knowledge that the claim was groundless."
 
 
 10
 In a diversity case we give great deference to the district court's interpretation of state law. Hollman v. Liberty Mutual Insurance Co., 712 F.2d 1259, 1261 (8th Cir.1983). In this case, although the district court noted the Henderson decision, the court properly applied the Haswell standard to the attorney-defendant. Two recent Missouri appellate court decisions support the district court's analysis. In Zahorsky v. Griffin, the state appellate court discussed Henderson and other early Missouri cases dealing with the liability of an attorney as a defendant in a malicious prosecution case. 690 S.W.2d at 153-54. The court concluded that Haswell's definition of probable cause was "applicable to any defendant in an action for malicious prosecution and that the statement in Henderson with respect to the determination of probable cause on the part of an attorney must be within the context of Haswell." Id. at 153. The court held that the proper inquiry when an attorney is a defendant in a malicious prosecution action is whether the attorney had a good faith belief in the facts disclosed by the client and a reasonable belief that the facts stated a valid claim. Id. at 154. In McGuire v. Wilcher, the appellate court also applied Haswell's definition of probable cause to an attorney defendant. The court undertook to determine what the "reasonable belief of the ordinary, prudent attorney would be in the circumstances." 689 S.W.2d at 722.
 
 
 11
 Applying Haswell to the undisputed facts, we agree with the district court that Gage & Tucker had probable cause to recommend that Traders file the conversion actions. First, as the district court noted, Gage & Tucker conducted an extensive factual investigation. Second, the district court correctly found that Gage & Tucker had a reasonable belief that the facts stated a conversion claim. Appellants argued throughout the proceedings in the district court and continue to argue on appeal that they should prevail because Gage & Tucker's legal theory was erroneous. Appellants' argument is misdirected. The district court properly focused its inquiry solely on the question of probable cause. As the court noted, it was "not ruling on the ultimate merits of the question of whether the cattle in possession of a debtor engaged in farming operations but not actually 'used or produced' in those operations would be classified as farm products or inventory." Rather, the court correctly determined whether under the facts as they reasonably appeared at the time the suits were filed Gage & Tucker had a reasonable basis to believe the claim was valid. See Zahorsky v. Griffin, 690 S.W. at 154 (issue in malicious prosecution is "not whether reasonable minds could differ as to outcome of the underlying ... action"); McGuire v. Wilcher, 689 S.W.2d at 723 (courts in malicious prosecution actions do not "re-decide" underlying action but only whether defendants had a reasonable belief in claim). Given the ambiguities of the statutory language and the paucity of controlling case law, we agree with the district court that Gage & Tucker had a reasonable belief that the facts known at the time the suits were filed stated a conversion claim. See id. at 722-24 (attorney may have a reasonable belief in a claim even though legal validity of claim is uncertain).
 
 
 12
 We also find that the district court properly granted summary judgment in favor of Guilfoil and General Bancshares. The undisputed facts demonstrate that Guilfoil and General Bancshares relied on the advice of Gage & Tucker. Under Missouri law, "[g]ood faith reliance on advice of counsel in commencing judicial proceedings against another is a defense to an action for malicious prosecution ... if there has been full disclosure ... of all material facts, including those within [the] client's actual knowledge and those of which he might have learned by reasonable diligence." Haswell v. Liberty Mutual Insurance Co., 557 S.W.2d at 636. The judicial proceeding must be "pursuant to the legal advice ... and not in pursuance of a previous fixed determination to commence such a proceeding." Id. at 636-37 n. 6. Contrary to appellants' assertions, there is nothing in the record to suggest that Guilfoil or General Bancshares were predisposed to file suit or were acting from an improper motive.
 
 
 13
 We also find that substantial evidence supports the jury verdict that Traders relied on the advice of Gage & Tucker. Again, there is no evidence of a predisposition or bad motive. Appellants attempt to demonstrate bad faith because Oliver believed that the question whether the cattle were "farm products" or "inventory" was a close one and indicated he wanted a second opinion. We do not view this as evidence of bad faith, but rather that Oliver exercised good faith and diligence in authorizing the filing of the suits.
 
 
 14
 Appellants make numerous other arguments regarding alleged trial errors. Assuming the claims are properly before this court, we find them to be without merit.
 
 
 15
 Accordingly, the judgments of the district court are affirmed.
 
 
 
 [1]
 The Honorable Joseph E. Stevens, Jr., United States District Judge for the Eastern and Western Districts of Missouri
 
 
 [2]
 Pending before the court are appellees' motions to dismiss case No. 85-1216 and motions to dismiss Albia Sales, Inc. (Albia) as an appellant in Nos. 85-1215 and 85-1216. Appellees allege that the single notice of appeal filed in the two consolidated cases did not specify an appeal from the order granting summary judgment in favor of Gage & Tucker, General Bancshares, and Guilfoil or from the order dismissing Albia as a plaintiff. We deny the motions
 Fed.R.App. 3(c) provides that a notice of appeal "shall designate the judgment, order or part thereof appealed from." However, there is "a policy of liberal construction of notices of an appeal in situations where intent is apparent and there is no prejudice to the adverse party[.]" Simpson v. Norwesco, Inc., 583 F.2d 1007, 1009 n. 2 (8th Cir.1978). We find the intent to appeal the orders was apparent and appellees have not demonstrated prejudice. The intent to appeal the order granting summary judgment was evident from the filing of a premature notice of appeal and the inclusion of the order on the appeal information form. See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1967). The intent to appeal the order dismissing Albia was apparent given the procedural history of the case, the listing of Albia on the caption of the notice of appeal, and the inclusion of the order on the appeal information form. Furthermore, the parties have addressed the merits in their briefs. See United States v. One 1977 Mercedes Benz, 708 F.2d 444, 451 (9th Cir.1983), cert. denied, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).
 We find that the district court properly dismissed Albia as a plaintiff on the ground that Albia lacked capacity to sue pursuant to R.S.Mo. Sec. 351.635. The statute provides that a foreign corporation who does business in Missouri must obtain a certificate of authority. If the corporation fails to procure a certificate, the corporation is barred from bringing suit. We need not address Albia's argument on appeal that it was exempt from Sec. 351.635. This argument apparently was not raised in the district court. In addition, we note that because we find that appellees had probable cause to file the conversion actions, the district court's dismissal of Albia as a plaintiff has little, if any, practical effect.
 
 
 [3]
 Traders and BOSL were both owned by General Bancshares