Kenneth J. BUCH, Keith E. Buch, Cathryn Joanne Buch and Michael K. Buch, Individually and as Statutory Trustees of Buch, Inc. (a Missouri corporation), and Lyle D. Miller, Plaintiffs–Appellants,

v.

J. William HOLLIDAY, Defendant–Respondent.

No. 58197.

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 11, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 1991.

Application to Transfer Denied March 5, 1991.

Clifford Christy Barton, Jefferson City, for plaintiffs-appellants.

Marion F. Wasinger, Hannibal, for defendant-respondent.

SMITH, Judge.

Plaintiffs appeal from the entry of summary judgment against them in their suit against defendant William Holliday. The underlying action included other defendants and additional counts and as to them the action remains pending. The order granting the summary judgment was designated as final for purposes of appeal. Rule 74.01(b).

The parties have, unfortunately, dealt with this case, both here and in the trial court, with an absence of precision and an abundance of extraneous and tangential issues. Our review is limited to determining whether on the record before us there exist material facts in dispute precluding the granting of summary judgment. *See State ex rel. Kirkpatrick v. Board of Education of St. Louis County,* 686 S.W.2d 888 (Mo.App.1983) [2]. The parties have not identified with particularity the portions of the record upon which they rely here or relied in the trial court.

Keith and Cathryn Buch are husband and wife. Kenneth Buch is the son of Keith and Cathryn. Michael Buch, another son, is largely uninvolved. Lyle Miller is a logger. J. William Holliday is a lawyer practicing in Clark county.

In August 1979, Keith and Cathryn purchased from Ralph Jenkins and his since deceased wife, a farm located in Clark County. Kenneth lived on and worked the farm. Financing for the purchase was furnished by the sellers. In April 1985, in order to refinance the loan, the Buchs formed a corporation, Buch, Inc. Holliday was employed by the Buchs to handle the incorporation. He also was assistant secretary and the registered agent.

Following the incorporation Buch, Inc. executed a note and a deed of trust on the farm in favor of the Jenkins. There is nothing of record to indicate that ownership of the farm was transferred from Keith and Cathryn to Buch, Inc. In August 1986, Buch, Inc.'s charter was forfeited for failure to pay the franchise tax. That forfeiture was never rescinded and is still in effect. Notification of the forfeiture was given to Holliday who in turn notified Kenneth Buch.

There is an indication in the record (although the deed does not appear) that in September 1986, Keith and Cathryn executed a quit-claim deed of the farm to Buch, Inc. What the effect of such a deed to a forfeited corporation is we do not address. A payment on the note was due December 1, 1986. Because of a crop failure money for payment of that installment was not then available although crop insurance proceeds were expected to be forthcoming. On December 29, 1986, Kenneth Buch, as president of Buch, Inc. signed a corporate warranty deed transferring the farm from Buch, Inc. to Jenkins and his children. The signing occurred in Holliday's office. Buch contended he was told by Holliday that if he could not immediately make the December 1 payment he had to sign the deed. Holliday was at that point representing the Jenkins family. Buch in an affidavit denied that he acknowledged the deed and stated that the acknowledgement was made by Holliday after he had left the office.

Holliday and Mrs. Bertram, Jenkins' daughter, stated in affidavits that the deed was signed as part of an agreement between the Buchs and the Jenkins family by which the Jenkins would reacquire the land and the Buch's loan would be forgiven including a substantial deficiency caused by the drop in value of the farm. Both indicated that Kenneth Buch acknowledged the deed and the authorization by the corporation for the sale. Kenneth Buch subsequently repudiated the deed. He does not aver in his affidavit that Holliday was aware of the repudiation prior to January 12, 1987.

In September, 1986, Kenneth entered into an agreement with Lyle Miller for Miller to purchase 150 trees on the farm. Pursuant to that agreement Miller felled the trees and skidded them onto another location on the farm for subsequent removal.

On January 12, 1987, Holliday, on behalf of the Jenkins family, filed an unlawful detainer action in the circuit court of Clark County. Kenneth contends that upon service of the summons in that action he was immediately evicted from the premises by the deputy sheriff at the urging of Mrs. Bertram. There is a letter dated April 6, 1987, attached to Holliday's affidavit indicating that as late as that date Kenneth Buch was still utilizing the farm. That letter also indicates that the logs were still located on the farm.

In February 1987, aware of Kenneth Buch's repudiation of the corporate deed, Holliday proceeded to foreclose the deed of trust. The record does not indicate that any attempt was made to prevent the foreclosure or to set it aside. On April 7, 1987, the unlawful detainer suit was voluntarily dismissed by Holliday on behalf of his clients. The April 6 letter indicated that the suit was being dismissed because the property had been sold after the foreclosure and Kenneth Buch had vacated the property except for the removal of some corn.

On April 6, 1989, the present suit was filed. It named as defendants Holliday and the Jenkins family. Three of the six counts were directed at Holliday. Count I was a claim for damages for malicious prosecution against all defendants. It was brought by Kenneth Buch, individually and as a statutory trustee for Buch, Inc., Lyle Miller individually, and Michael, Keith and Cathryn Buch as statutory trustees of Buch, Inc. It premised recovery on the filing of the unlawful detainer suit. It claimed damages consisting of attorney's fees, loss of personal property (timber and logs) and loss of the Buch farm. Of the actual damages claimed by the Buchs of $390,000, $385,000 represented the loss of

the farm. Miller claimed damages of $5,000.

Count V sought damages for abuse of process against all defendants premised upon the use of the summons in the unlawful detainer action to immediately seize the Buch farm and crops and logs thereon. It was brought by the same persons in the same capacities as Count I. It alleged the same damages as Count I and additionally sought punitive damages.

Count VI sought recovery of damages solely against Holliday on a theory of intentional breach of fiduciary duty. It was brought by the Buch family members individually and as statutory trustees of Buch, Inc. It was premised on Holliday's conduct in representing the Jenkins family while also serving as attorney for the Buchs and as officer of Buch, Inc. It sought actual damages of one million dollars for loss of the Buch farm, loss of personal property thereon, loss of future income from the farm, and attorney's fees. It also sought punitive damages.

All three counts against Holliday are premised essentially on the unlawful detainer action. That action in turn was based on the corporate deed from Buch, Inc. to the Jenkins family.

■ Holliday contends the malicious prosecution action was brought outside the time limits of the statute of limitations. Sec. 516.140, R.S.Mo.1986, imposes a two year limitation on malicious prosecution actions. The cause of action arises on the date the underlying proceeding is terminated. *Euge v. Lemay Bank and Trust Co.,* 386 S.W.2d 398 (Mo.1965) [4–6]. An action is commenced in this state upon the filing of a petition with the court. Rule 53.01. The petition in this case was filed within two years after dismissal of the underlying suit. Holliday attempts to invoke authority which holds that the party filing suit must proceed with due diligence to effectuate service. *Slack v. Englert,* 617 S.W.2d 483 (Mo.App.1981) [1]; *Wooliver v. Schopp,* 509 S.W.2d 216 (Mo.App.1974) [2]; *Tri–City Construction Co. v. A.C. Kirkwood and Associates,* 738 S.W.2d 925 (Mo.App. 1987) [4]. In this case plaintiffs sought to effect service on Holliday by mail pursuant to 506.150 R.S.Mo.1989 Supp. This attempt was made immediately after filing the suit. When no acknowledgement of the service was received as provided by the statute, plaintiffs immediately had service effected by the sheriff. Plaintiffs followed the statutory authorization for service. There was no absence of due diligence nor did they in any way countermand or delay service. The action was timely brought.

■ To the extent the actions seek to recover damages for loss of the farm and profits accruing from future operation of the farm the summary judgment was properly granted. The loss of the farm occurred because of the foreclosure of the deed of trust, not because of the unlawful detainer action. The record does not establish that any attempt was made to prevent the foreclosure or to set it aside after it occurred. Holliday's action in filing the unlawful detainer is not the proximate cause of losses arising from the foreclosure.

■ The abuse of process action against Holliday is similarly properly the subject of a summary judgment. Holliday in his affidavit stated that the process was utilized by him solely as a notification to the Buchs of the pendency of the unlawful detainer action. Kenneth Buch's affidavit does not contravene that statement. It states only that Mrs. Bertram stated that he must immediately leave the premises because "Holliday said so." The affidavit further states "Defendant Bertram, purportedly acting upon the advice and instruction of defendant Holliday, used the process served upon me as a lever to seal off most of the farm premises from the plaintiffs ..." Affidavits in summary judgment proceedings must be made on personal knowledge and "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 74.04(e). The affidavit of Kenneth Buch does not meet those criteria as to the essential allegation of Holliday's misuse of the process. *See St. Charles County v. Dardenne Realty Co.,* 771 S.W.2d 828 (Mo. banc 1989) [4–8].

The count for intentional breach of fiduciary duty is also flawed. While it alleges a potential conflict of interest in Holliday's representation of Buch, Inc. and the Jenkins family it does not allege any correlation between that conflict and any damages sustained by the plaintiffs. The affidavits of Kenneth Buch do nothing to fill in the blanks in the petition. *See Snowden v. Northwest Missouri State University*, 624 S.W.2d 161 (Mo.App.1981) [8].

We turn to the unlawful detainer action. In his affidavit Holliday states that he furnished to Kenneth Buch the notice of forfeiture and the necessary papers for removing the forfeiture and that he assumed from a document he received that the forfeiture had been or would be removed early in September. He did not become aware that it had not been removed until mid-March. In the document he received from Buch, Inc. was advice that a quit-claim deed had been executed from Keith and Cathryn Buch to Buch, Inc. In his affidavit Holliday further stated he was unaware of Kenneth Buch's repudiation of the December 29 deed until after filing of the unlawful detainer suit. Kenneth Buch did not directly contravene any of these allegations averring instead that Holliday could have learned of the continued existence of the forfeiture by contacting the Secretary of State's office and that Buch had repudiated the deed prior to the unlawful detainer suit by telling Mrs. Bertram.

A deed granted in the name of a forfeited corporation is invalid. *Land Clearance Development Authority of the City of St. Louis v. Zitko*, 386 S.W.2d 69 (Mo.1964) [27, 28]. To the extent therefore that the unlawful detainer action was based upon the December 29 deed it was improper. Holliday did allege that he was actually unaware of the continuation of the forfeiture and the communication from Buch, Inc. in September indicated continued activity as a corporation. A malicious prosecution action requires that there be a want of probable cause for prosecution. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984) [1]. Probable cause requires that "under the circumstances an ordinarily careful and prudent person after having made reasonable inquiry would have believed the facts alleged and that the judicial proceeding was valid." *Haswell v. Liberty Mutual Insurance*, 557 S.W.2d 628 (Mo. banc 1977) [4]. Reasonable belief means that a party is "responsible not only for all facts which he knows at the time, but for all other pertinent facts which he could have ascertained by due diligence prior to instituting the prosecution." *Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479 (Mo.1972) [1–6]. This definition applies with equal force to attorney defendants. *McAninch v. Traders National Bank*, 779 F.2d 466 (8th Cir. 1985) [4]. An attorney has the right to act upon the facts which he gets from his client and is not required to go elsewhere for information. *Zaborsky v. Griffin, Dysart, Taylor, Penner & Lay*, 690 S.W.2d 144 (Mo.App.1985) [15]. Here, however, Holliday was more knowledgeable about the status of Buch, Inc. than were his Jenkins family clients. He was aware of the prior forfeiture of the charter and had no clear information that the charter had been reinstated. Under these circumstances there exists a question of material fact as to the issue of probable cause.

An additional comment is justified. Inasmuch as no attack has been made on the foreclosure proceedings plaintiffs' damages under the malicious prosecution, if that cause is established, are quite limited. We have not been provided with the proceedings in the malicious prosecution suit so we are unaware what if any limitations were imposed on the plaintiffs' use of the land or their access to the logs between the filing of the unlawful detainer suit and the foreclosure suit. As previously indicated, losses resulting from the foreclosure are not recoverable.

Judgment on Counts V and VI are affirmed. Judgment on Count I is reversed for further proceedings in conformity with this opinion.

CRANDALL, C.J., and GRIMM, J., concur.